**In re GRAND JURY INVESTIGATION NO. 78–184.**

**SELLS, INC., Peter A. Sells, Fred R. Witte, Appellants,**

v.

**UNITED STATES of America, Appellee.**

No. 78–3709.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 9, 1980.

Decided April 2, 1981.

Arlington Ray Robbins, San Diego, Cal. (argued), Daniel B. Hunter, Hunter & Ryan, E. Mac Amos, Jr., McWilliams, Amos & Curnow, San Diego, Cal., on brief, for appellants.

Stephen D. Altman, Dept. of Justice, Washington, D.C., for appellee; J. Roger Edgar, Washington, D.C., on brief.

Before FARRIS and NELSON, Circuit Judges, and CURTIS,* District Judge.

* Honorable Jesse W. Curtis, Senior Judge for the Central District of California, sitting by designation.

FARRIS, Circuit Judge:

Peter A. Sells, Fred R. Witte, and Sells, Inc., appeal from the district court's order under Federal Rule of Criminal Procedure 6(e) granting the Civil Division of the Department of Justice access to documents, exhibits, and testimony acquired by a federal grand jury. The United States urges us to dismiss the appeal for want of jurisdiction. We uphold appellate jurisdiction and reverse.

In 1974, Special Agent Edwin Wordell of the Internal Revenue Service began a combined civil and criminal administrative investigation of Sells, Witte, and Sells, Inc. He issued administrative summonses for various corporate records of Sells, Inc. Sells, Inc., refused to comply with the administrative summonses. Wordell obtained a district court order enforcing the summonses on July 29, 1975, but his investigation was further delayed by a stay of enforcement pending appeal of the order to this court.[1]

In May 1977 a federal grand jury was convened to investigate whether Sells, Witte, and Sells, Inc., had criminally defrauded the United States or evaded the federal income tax. The grand jury issued summonses to Sells, Witte, and Sells, Inc., for many of the materials previously sought by administrative summonses. On April 13, 1978, the grand jury indicted the three on two counts of conspiracy to defraud the United States, 18 U.S.C. § 371 (1976), and nine counts of tax fraud, 26 U.S.C. § 7206(2) (1976). Pursuant to a plea bargain Sells and Witte pleaded guilty before another district judge to one count of conspiracy to defraud the government by obstructing an IRS investigation. All other counts against the three defendants were dismissed.

On December 18, 1978, the government moved for disclosure of the grand jury materials to Civil Division attorneys and their assistants for possible civil prosecution. Sells, Witte, and Sells, Inc., objected, alleging grand jury abuse.[2] The district court

---

1. While that appeal was pending, some of the documents sought were turned over to the grand jury discussed in the following paragraph of text. On October 13, 1978, after learning this, we remanded for reconsideration to the district judge who had ordered enforcement. *United States v. Center Glass Co. No. 3*, No. 75–3025 (9th Cir. Oct. 13, 1978). The government did not further pursue enforcement, and the action was dismissed by the district court for lack of prosecution. *United States v. Center Glass Co.*, No. 75–0325T (S.D. Cal. dismissed Oct. 9, 1980).

2. Shortly before the time that Wordell convened the grand jury, the Internal Revenue Manual §§ 9267.4, 9268 (Oct. 1977) provided for debriefing of witnesses testifying to "open-ended" grand juries in IRS investigations:

9267.4 "Open-ended" Grand Jury Proceedings

(1) Occasionally, investigations into areas of noncompliance are stymied by a series of reluctant witnesses, and it is not possible to determine the precise limits of the tax violations in terms of defendants and taxable periods. If such investigations become stymied, and it appears that an open-ended grand jury inquiry would probably develop information which would result in prosecution recommendation(s), the special agent should submit a complete report [to his superior] . . . .

. . . .

(5) If the Tax Division concurs in the [special agent's and superior's] request, it will

authorize the United States Attorney(s) to institute grand jury proceedings.

(6) Following the appearance of witnesses before the grand jury, the procedures of [Internal Revenue Manual §] 9268 will be followed.

(7) The United States Attorney or the Strike Force Attorney will be advised that jurisdiction of the tax aspects remains with the Internal Revenue Service and the Tax Division, Department of Justice and that prosecutive recommendations under Title 26 will be processed in the regular manner. 9268 Secrecy of Grand Jury Proceedings and Disclosures

(1) Following an appearance before a grand jury, such grand jury witness should be interviewed by a special agent in an attempt to obtain the same information which the witness furnished to the grand jury. If the witness cooperates, any question of grand jury secrecy and the Service use of grand jury testimony for both criminal and civil purposes can thus be avoided.

(2) If the witness refuses to respond to the questions asked by the special agent, the United States Attorney should be asked to obtain a court order under Rule 6(e), Federal Rules of Criminal Procedure (18 U.S.C. app.), to authorize the Service use of the grand jury testimony for both criminal and civil purposes. In the event the court declines to sign an order, the Chief should seek the advice of Regional Counsel.

ruled that it need not reach the issue of abuse because the Civil Division was entitled under Federal Rule of Criminal Procedure 6(e)(3)(A)(i) to the materials as a matter of right. Sells, Witte, and Sells, Inc., jointly appeal this decision. On September 17, 1979, the United States filed civil suit against Sells, Witte, and Sells, Inc., under the False Claims Act, 31 U.S.C. §§ 231–235 (1976), and at common law.

## I. APPELLATE JURISDICTION

■ The United States attacks this court's jurisdiction to review the disclosure order, arguing that the order is not a "final decision" within the meaning of 28 U.S.C. § 1291 (1976), but rather an interlocutory order and therefore not immediately appealable. We recognize that appellate courts have shown great reluctance to entertain appeals from Rule 6(e) orders before conclusion of grand jury proceedings. *E. g., In re Grand Jury Proceedings*, 580 F.2d 13, 16–17 & n.4 (1st Cir. 1978). Interruptions caused by interlocutory appeals pose substantial threats to the grand jury process. *Cobbledick v. United States*, 309 U.S. 323, 327–28, 60 S.Ct. 540, 542, 84 L.Ed. 783 (1940). One court has dismissed an appeal from a disclosure order entered while civil proceedings were ongoing, noting that review could be accomplished by challenging admission of improperly obtained evidence after final judgment. *Baker v. United States Steel Corp.*, 492 F.2d 1074, 1078 (2d Cir. 1974).

Here a different situation is presented. At the time of entry of the Rule 6(e) order, criminal proceedings had terminated. It was not until nearly nine months after entry of the order—and fully eight months after filing of this appeal—that the government filed civil suit. In these circumstances, the disclosure order was the result of an independent proceeding. The order here, which conclusively resolved the only issue in that proceeding, is a "final decision" and therefore immediately appealable. *See In re Grand Jury Investigation*, 630 F.2d 996, 999–1000 (3d Cir. 1980); *United States v. Sobotka*, 623 F.2d 764, 766 (2d Cir. 1980); *see also Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 233, 99 S.Ct. 1667, 1680, 60 L.Ed.2d 156 (1979) (Rehnquist, J., concurring).

## II. MOOTNESS AND RIPENESS

■ The United States contends that this appeal is moot because many of the grand jury materials in question have already been disclosed to Civil Division attorneys and their assistants. It asserts that even if Sells, Witte, and Sells, Inc., prevail this court will be powerless to accord relief.

We disagree. The controversy here is still a live one. By its terms the disclosure order grants access to all attorneys for the Civil Division, their paralegal and secretari-

(3) Special agents may have access to information arising from a grand jury investigation and utilize it for criminal investigative purposes. This information cannot be used for civil purposes, however, unless cooperation of the witness is obtained in providing the same information which the witness gave to the grand jury, or it becomes part of a public record, such as in a court proceeding, or a court order is obtained under Rule 6(e), Federal Rules of Criminal Procedure that authorizes the use of the information for civil purposes. Failure to obtain at least one of these and a subsequent disclosure in civil proceedings could result in a possible contempt citation for improper disclosure of grand jury materials.

See generally *In re April 1977 Grand Jury Subpoenas*, 573 F.2d 936, 941–44 (6th Cir.) *vacated and appeal dismissed on rehearing en banc*, 584 F.2d 1366 (6th Cir. 1978), *cert. denied*, 440 U.S. 934, 99 S.Ct 1277, 59 L.Ed.2d 492 (1979); 584 F.2d at 1373 (Weick, J., dissenting); *In re Grand Jury Subpoena (Berkovitz)*, 367 F.Supp. 1058, 1060–61 (E.D.Pa.1979) ("validity of these procedures is highly suspect"); R. Fink, *Tax Fraud* §§ 8.04[2], 8.07[4] (1980). The record in this case contains several affidavits attesting to use of a similar procedure. These affidavits form the basis of appellants' claim of grand jury abuse.

After this procedure was attacked in federal district court the IRS and the Justice Department agreed to abandon the procedure. By a series of telegrams sent November 24, 1976, April 11, 1977, and June 2, 1977, the Acting Commissioner rescinded and replaced the IRS's standards for dealing with grand juries. On June 15, 1977, a supplement to the Internal Revenue Service Manual was issued incorporating the changes.

al staff, and all other necessary assistants. Each day this order remains effective the veil of secrecy is lifted higher by disclosure to additional personnel and by the continued access of those to whom the materials have already been disclosed. We cannot restore the secrecy that has already been lost but we can grant partial relief by preventing further disclosure.

■ The United States also contends that any challenge to use of the materials is premature. It cites several cases suggesting that evidence improperly obtained from a grand jury may be suppressed at a subsequent civil proceeding. *See In re April 1977 Grand Jury Subpoenas (General Motors)*, 584 F.2d 1366, 1370 (6th Cir. 1978) (en banc), *cert. denied*, 440 U.S. 934, 99 S.Ct. 1277, 59 L.Ed.2d 492 (1979); *In re Grand Jury*, 583 F.2d 128, 131 (5th Cir. 1978) (per curiam); *In re Grand Jury Subpoenas*, 581 F.2d 1103, 1110 n.16 (4th Cir. 1978), *cert. denied*, 440 U.S. 971, 99 S.Ct. 1533, 59 L.Ed.2d 787 (1979); *In re Fred R. Witte Center Glass No. 3*, 544 F.2d 1026, 1029 (9th Cir. 1976); *Coson v. United States*, 533 F.2d 1119, 1120–21 (9th Cir. 1976) (per curiam); *see also, United States v. Penrod*, 609 F.2d 1092, 1097 (4th Cir. 1979), *cert. denied*, 446 U.S. 917, 100 S.Ct. 1850, 64 L.Ed.2d 271 (1980); S.Rep. No. 95–354, 95th Cong., 1st Sess. 7 n.12 (1977), *reprinted in* 1977 U.S. Code Cong. & Ad. News 527, 531 n.12. This fact does not make the present action unripe or premature. This action is a proper means to prevent future disclosure before it occurs; the availability of a motion to suppress in future civil proceedings provides a remedy for improper disclosures that have already occurred. Our decision here and any rulings on remand regarding the propriety of the disclosures will of course be binding in such proceedings, at least upon the parties to this appeal.

## III. PROPRIETY OF DISCLOSURE

Federal Rule of Criminal Procedure 6(e), which governs grand jury secrecy, provides in part:

(2) *General rule of secrecy.* A grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony, an attorney for the government, or any person to whom disclosure is made under paragraph (3)(A)(ii) of this subdivision shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules. . . .

(3) *Exceptions.*

(A) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury, other than its deliberations and the vote of any grand juror, may be made to—

(i) an attorney for the government for use in the performance of such attorney's duty; and

(ii) such government personnel as are deemed necessary by an attorney for the government to assist an attorney for the government in the performance of such attorney's duty to enforce federal criminal law.

. . . .

(C) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made—

(i) when so directed by a court preliminarily to or in connection with a judicial proceeding; or

(ii) when permitted by a court at the request of the defendant, upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury.

The United States contends that Rule 6(e)(3)(A)(i) allows disclosure to Civil Division attorneys without court order. It also contends that the district court's disclosure to secretaries, paralegals, and assistants was proper under Rule 6(e)(3)(C)(i). Sells, Witte, and Sells, Inc., dispute both contentions.

### A. *Disclosure to Civil Division Attorneys*

■ Federal Rule of Criminal Procedure 6(e)(3)(A)(i) grants disclosure of grand jury materials to "an attorney for the govern-

ment for use in the performance of such attorney's duty." Such disclosure is a matter of right; it may be accomplished without court order, *e. g., In re Grand Jury*, 583 F.2d 128, 130 (5th Cir. 1978) (per curiam); *United States v. Garcia*, 420 F.2d 309, 311 (2d Cir. 1970) (per curiam). Federal Rule of Criminal Procedure 54(c) provides:

> "Attorney for the government" means the Attorney General, an authorized assistant of the Attorney General, a United States Attorney, [or] an authorized assistant of a United States Attorney . . . .

The United States accordingly contends that the portion of the district court's order that disclosed to Civil Division attorneys was proper, and in fact superfluous.

Sells, Witte, and Sells, Inc., contend that Rule 6(e)(3)(A)(i) applies only to disclosure in aid of criminal, rather than civil, law enforcement. They argue that "such attorney's duty" refers only to the Justice Department's criminal prosecution duty. To support this argument, they refer to the history of enactment of the present version of Rule 6(e).

Rule 6(e) first became effective on March 21, 1946. It entitled attorneys for the government to access to grand jury proceedings other than deliberations and votes of the grand jurors. *Federal Rules of Criminal Procedure*, 327 U.S. 821, 837–38 (1946). The Advisory Committee on Criminal Rules indicated in its accompanying notes that that portion of proposed rule 6(e) continued existing practice. The note stated that the provision for disclosure to attorneys for the government was included because "they may be present in the grand jury room during the presentation of evidence."

Rule 6(e) remained essentially unchanged until 1976 when, because the increasing complexity of grand jury investigations required that United States Attorneys have the technical aid of other government personnel in order to adequately assist grand juries, *see, e. g., In re Grand Jury Investigation (William H. Pflaumer & Sons)*, 53

F.R.D. 464, 468, 475–76 (E.D.Pa.1971), the Supreme Court recommended amendment of Rule 6(e) to include within the term "attorneys for the government" "such other government personnel as are necessary to assist the attorneys for the government in the performance of their duties." *Amendments to Federal Rules of Criminal Procedure*, 425 U.S. 1157, 1161 (1976). The Advisory Committee on Criminal Rules stated in its notes that "[t]he proposed amendment reflects the fact that there is often government personnel assisting the Justice Department in grand jury proceedings." *Notes of Advisory Committee on Rules, reprinted in* 18 U.S.C.App., at 413 (Supp. I 1977). Thus, the Committee continued the focus of the exception to the secrecy requirement on governmental employees assisting grand juries in their deliberations.

Before the proposed amendment could take effect, Congress exercised its authority under 18 U.S.C. § 3771 (1976) to modify the proposal. *See* Act of July 30, 1977, Sec. 2, Pub.L.No. 95–78, 91 Stat. 319. Like the Advisory Committee, the Senate and House Committees on the Judiciary noted that modern conditions made the assistance of experts, often agents of the FBI, IRS, or Treasury Department, essential to prosecutors' evaluation of evidence. S.Rep. No. 95–354, 95th Cong., 1st Sess. 6 (1977), *reprinted in* 1977 U.S. Code Cong. & Ad. News 527, 529–30; H.R.Rep. No. 95–195, 95th Cong. 1st Sess. 3–4 (1977). Because of varying judicial interpretations of Rule 6(e), both as then in effect and as proposed, Congress chose to redraft the rule. *See* S.Rep. No. 95–354, 95th Cong., 1st Sess. 7 (1977), *reprinted in* 1977 U.S. Code Cong. & Ad. News 527, 530. The present version does not materially differ from the redraft.

Because of the overriding emphasis on aiding federal prosecutors in their duty of assisting grand jurors, neither the 1946 nor the 1976 Advisory Committee Notes even mention civil use of grand jury materials. The issue did arise in the courts, however, and several federal courts approved access

to grand jury materials by United States Attorneys for use in civil enforcement suits. *In re Grand Jury*, 583 F.2d 128, 130 (5th Cir. 1978) (per curiam); *In re Grand Jury Investigation (William H. Pflaumer & Sons)*, 53 F.R.D. 464, 472 (E.D.Pa.1971); *United States v. General Electric Co.*, 209 F.Supp. 197, 199, 202 (E.D.Pa.1962); *Washington v. American Pipe & Construction Co.*, 41 F.R.D. 59, 62 (S. & N.D.Cal., D.Hawaii, D.Or. & W.D.Wash.1966); *In re Petroleum Industry Investigation*, 152 F.Supp. 646, 647 (E.D.Va.1957). On the other hand, neither the Supreme Court nor this court has ever ruled on the matter.

▇ In construing Rule 6(e), we start with the traditional and fundamental policy of grand jury secrecy. *See generally Goodman v. United States*, 108 F.2d 516, 519 (9th Cir. 1939). That policy is especially important here because of the broad investigatory powers of the grand jury:

> It is a grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime.

*Blair v. United States*, 250 U.S. 273, 282, 39 S.Ct. 468, 471, 63 L.Ed. 979 (1919). Investigation for civil enforcement is relatively limited. In fact, frustration over limitations on civil discovery may have prompted the government to convene the grand jury here. To grant the government an *absolute right* of access to grand jury materials for civil use might irresistibly encourage use of the grand jury as a tool of civil discovery. It would also severely limit court review of any such abuse.

In view of the strength of the secrecy policy, any statutory exception should be construed in the context of the considerations that prompted enactment of the exception. The history of Rule 6(e) shows that the exception allowing disclosure to attorneys for the government was motivated primarily, if not solely, by the grand jury's need for legal and technical assistance. Accordingly, we are not inclined to extend the "attorney for the government" exception to the secrecy rule beyond disclosure for use in assisting grand juries and related aspects of criminal law enforcement.

The 1977 Senate Report supports this position. It indicates that civil use of grand jury-developed evidence may be accomplished through a subsection C court order. It strongly implies that a court order must be obtained, stating that "there is no reason why such use is improper, assuming that the grand jury was utilized for the legitimate purpose of a criminal investigation." S.Rep. No. 95–354, 95th Cong., 1st Sess. 8 (1977), *reprinted in* 1977 U.S. Code Cong. & Ad. News 527, 532. We hold that Congress intended a court order under subsection C to be the avenue to access to grand jury materials by the government for civil use. The contention of the United States that Civil Division attorneys have an absolute right to access is therefore rejected. *Accord, In re Grand Jury*, 82 F.R.D. 70, 73 (N.D.W.Va.1979); *see also In re April 1956 Term Grand Jury*, 239 F.2d 263, 272–73 (7th Cir. 1956).

The district court granted access to Civil Division attorneys as a matter of right. Although expressing the opinion that the requirements for a subsection C court order were met, the district court expressly stated that it need not reach the issue. Because we find that Civil Division attorneys enjoy no absolute right of access under subsection A, we must determine whether a court order was proper under subsection C. As previously stated, the subsection C standards also apply to disclosure to secretaries, paralegals, and assistants.

**B. *Propriety of Disclosure Under Subsection C***

Federal Rule of Criminal Procedure 6(e)(3)(C)(i) authorizes a court to order dis-

closure of matters occurring before a grand jury for use preliminary to or in connection with a judicial proceeding. Initially, we note that the civil enforcement action here is a judicial proceeding. *But cf. United States v. Bates,* 627 F.2d 349, 351 (D.C.Cir. 1980) (per curiam) (administrative proceeding before Federal Maritime Commission not a "judicial proceeding").

 A court should not order disclosure in violation of the traditional grand jury secrecy except upon a showing of "particularized and compelling need." *E. g., U.S. Industries v. United States District Court,* 345 F.2d 18, 21 (9th Cir.), *cert. denied,* 382 U.S. 814, 86 S.Ct. 32, 15 L.Ed.2d 62 (1965); *see Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 222–23, 99 S.Ct. 1667, 1674–1675, 60 L.Ed.2d 156 (1979), *rev'g Petrol Stops Northwest v. United States,* 571 F.2d 1127, 1129–31 (9th Cir. 1978); *United States v. Procter & Gamble Co.,* 356 U.S. 677, 682–83, 78 S.Ct. 983, 986–987, 2 L.Ed.2d 1077 (1958). Although determination of whether such a need exists is left initially to the discretion of the trial judge, *U.S. Industries,* 345 F.2d at 21, the factors guiding that determination are well established. A court must examine not only the need of the party seeking disclosure, but also the effect such disclosure would have on the policies underlying grand jury secrecy. In *United States v. Procter & Gamble Co.,* 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958), the Supreme Court set out those policies:

"(1) [t]o prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of

crimes; (5) to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt."

*Id.* at 681 n.6, 78 S.Ct. at 986 n.6 (quoting *United States v. Rose,* 215 F.2d 617, 628–29 (3d Cir. 1954)).

The district court in ordering disclosure failed to consider these principles. Near the conclusion of the hearing on the Rule 6(e) motion, the trial judge stated that rationale for its order:

I think where you have an attorney with the Civil Division of the Department of Justice, as long as he has made a showing that he has a legitimate interest in the disclosure and that he has a need of, so-called particularized need, then I think it should and could be turned over to him.

. . . .

Now, I think that the government has shown a particularized need here. They have demonstrated that the grand jury materials are rationally related to civil matters within the duty of the attorney for the government and that he requires the assistance of non-lawyers described and it may be those non-lawyers will be Defense Department people, but I don't think this court is required to, nor is it going to look beyond what the statute provides, or what the rule provides. If the Civil Division has the authority to prosecute violations of False Claim Acts and there have been indications that these may have occurred—the Department of Justice Civil Division attorneys have the ability and the right to determine and assist in whether or not such violations did occur.

 The United States, like any litigant, has a legitimate interest in obtaining disclosure of materials that may help it to vindicate its rights through civil proceedings. A legitimate interest, however, is not necessarily compelling. The need for disclosure must be balanced against the policies of

secrecy articulated in *Procter & Gamble.* *See Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 223, 99 S.Ct. 1667, 1675, 60 L.Ed.2d 156 (1979). Because the criminal proceedings have terminated, the first three of those factors are not implicated. However, the fourth factor—encouragement of witness cooperation—may be strongly implicated here. The final factor also militates toward preserving secrecy, since at least one target, Sells, Inc., obtained dismissal of all criminal charges against it.

■ The showing of a rational relationship between the materials and the civil proceeding may explain the Government's desire for disclosure, but it does not help determine the degree of necessity. That determination is made by evaluating the policies of secrecy in light of the character of the materials. In doing so, the district court must examine each distinguishable type of protected material and determine for each whether the need for disclosure outweighs the traditional and fundamental presumption of secrecy. Any grand jury abuse that has occurred is relevant to the district court's decision whether to disclose, and the court should consider appellants' allegations of such abuse. *See Robert Hawthorne, Inc. v. Director of Internal Revenue,* 406 F.Supp. 1098, 1118 (E.D.Pa. 1975 amended 1976); *see also In re December 1974 Term Grand Jury Investigation,* 449 F.Supp. 743, 750–51 (D.Md.1978); S.Rep. No. 95–354, 95th Cong., 1st Sess. 8 (1977), *reprinted in* 1977 U.S. Code Cong. & Ad. News 527, 532 ("On the contrary, there is no reason why such use [of grand jury-developed evidence for civil law enforcement purposes] is improper, assuming that the grand jury was utilized for the legitimate purpose of a criminal investigation.").

The legislative history to the 1977 amendment of Rule 6(e) states that "the judicial hearing in connection with an application for a court order by the government under subparagraph (3)(C)(i) should be *ex parte* so as to preserve, to the maximum extent pos-sible, grand jury secrecy." S.Rep. No. 95–354, 95th Cong., 1st Sess. 8 (1977), *reprinted in* 1977 U.S. Code Cong. & Ad. News 527, 532. Much of the material to which the government seeks access consists of documents belonging to appellants. In these circumstances, the district court should hear appellants' views on disclosure of these documents, since such a hearing will in no way impair grand jury secrecy. It may also be appropriate for the district court to hear appellants' views on disclosure of documents with which they are familiar but do not own. We leave it for the district court to determine in the first instance, with reference to the policies underlying grand jury secrecy, whether adversary hearings should be held regarding other materials to which the government seeks access.

The order of the district court granting disclosure is vacated and the cause remanded for further proceedings consistent with this opinion. Pending these further proceedings, the district court shall take such steps as are, in its discretion, necessary to protect the appellants from the effects of past disclosure. To avoid continued or further improper disclosure, the mandate in this case shall issue forthwith. *See* Fed.R. App.P. 2. A petition for rehearing and a suggestion of rehearing en banc will be entertained in the ordinary fashion. *See* Fed.R.App.P. 35(b), 40.

CURTIS, District Judge, dissenting:

I dissent for, in my view, the issue which the appeal raises here is moot.

This is an appeal from an order of the district court made December 18, 1978, releasing grand jury records from the secrecy provision of Title 18 U.S.C.A. § 3326 (1977), Fed.R.Crim.P. 6(e). Since the effect of the order was never stayed, Civil Division attorneys for the Justice Department have had full access to all the minutes, books, and records of the grand jury's criminal investigation of these appellants. Even if we should hold that the district court erroneously permitted such disclosure, our rever-

sal cannot restore any vestige of secrecy, any more than we can unring a bell. It seems unrealistic to suggest that, after more than two years of unrestricted use of the material by government attorneys and their staff, any shred of relevant information remains unexplored to which this now tattered veil of secrecy might give shelter.

Moreover, the appellants have a remedy more direct than this appeal. Since the record indicates that the government has commenced a civil suit against them, one in which such grand jury records will most surely be offered as evidence, appellants can at that time challenge all such evidence by objections to its admissibility, or by a motion to suppress. The district court, having the benefit of a full record before it, can then resolve any remaining questions regarding the government's use of these grand jury materials.

Having concluded that the issue is moot due to the subsequent disclosure of grand jury materials, it follows that this court lacks subject-matter jurisdiction because no viable "case or controversy" is presented to us. *U.S. Const.*, art. III, § 2, cl. 1. *North Carolina v. Rice*, 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971): *Powell v. McCormack*, 395 U.S. 486, 496 n.7, 89 S.Ct. 1944, 1950 n.7, 23 L.Ed.2d 491 (1969).

I would dismiss the appeal.